UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY GARVINS,

       Plaintiff,

                                          Case No. 2:07-cv-174
v.                                      HON. R. ALLAN EDGAR

DAVE BURNETT, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Special Activities Director Dave Burnett, Institutional Chaplain James Vilgos, Warden Jeffrey White, and Family Nurse Practitioner Jeri Randall. Plaintiff alleges that he is a devout and practicing Buddhist and that his religious beliefs require that he adhere to a strict vegetarian diet. On July 28, 2004, plaintiff was approved for a religious diet by defendant Burnett. On May 3, 2005, plaintiff voluntarily went off his religious diet because of a serious medical condition. Plaintiff states that his right lung collapsed in November of 2004 and again in April of 2005, which required four emergency surgeries and the insertion of a chest tube. On August 25, 2005, at the conclusion of his follow-up medical treatment, plaintiff requested that his religious diet be reinstated. On August 30, 2005, defendant Burnett told plaintiff that he could reapply for the diet on August 25, 2006. On August 23, 2006, plaintiff reapplied for the diet. On September 20, 2006, plaintiff was transferred to the Kinross Correctional Facility (KCF) and was given a religious diet. On September 22, 2006, plaintiff was transferred to the Ojibway Correctional Facility (OCF), where they denied him his

religious diet. On October 27, 2006, plaintiff again reapplied for the diet, but defendant Vilgos recommended the denial of plaintiff's request to defendant Burnett. On October 30, 2007, defendant Burnett denied plaintiff's request for a Buddhist diet. Plaintiff seeks to be provided with this diet. Plaintiff asserts that defendant Vilgos ordered plaintiff to stop doing meditation and yoga postures during Buddhist services. Plaintiff asserts that he received a favorable grievance response indicating that he was allowed to utilize yoga and meditation during service. Plaintiff claims that after he made a comment at a Buddhist service regarding the grievance, defendant Vilgos retaliated by issuing plaintiff a major misconduct ticket for being disruptive. Vilgos then told plaintiff "Garvins, I've gone through 15 lawsuits and lost one of them. You need to realize that you're not suing me you're suing the state. You should consider that for the next three weeks."

Plaintiff also claims that he requested smoke free housing on November 16, 2006, because of a congenital lung condition, known as "pneumothorax." Plaintiff states that none of the housing units at OCF are tobacco free because prisoners are allowed to purchase tobacco products and they constantly violate the no smoking rule. Plaintiff claims that the only punishment for such violations is a minor misconduct ticket. Plaintiff further states that he was refused a medical accommodation for smoke free housing by defendant Randall on November 21, 2006. As a result, Plaintiff suffers from labored breathing, burning eyes, irritated skin, and lack of appetite.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of

material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Burnett and Randall move for dismissal, arguing that plaintiff failed to exhaust his grievance remedies against them. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910,

922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Jul. 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ P, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II

response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 120 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges conduct which falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, such as sexual misconduct, the grievance may be submitted directly to Step III. *Id.* at ¶ Q. Defendant Randall claims that plaintiff failed to exhaust his grievance remedies by not naming defendant Randall in one relevant grievance and by not attempting to resolve the matter within two days in the second relevant grievance. The second relevant grievance, OCF 06110131103C, was denied at Step I as duplicative of OCF 06-11-01274-03C, but the matter was more specifically addressed and rejected at both Step II and Step III. The responses did not indicate that the grievance was rejected because plaintiff failed to attempt to resolve the matter within two days of the alleged incident date. Moreover, a rejection of a grievance that is duplicative necessarily implies that the grievance was considered by the MDOC as exhausted at an earlier time. In the opinion of the undersigned, defendant Randall has failed in his burden of showing that plaintiff failed to exhaust grievance remedies against him.

Plaintiff never filed a Step I grievance against defendant Burnett. The issue was addressed by plaintiff in OCF 0611130720Z. Plaintiff named in his grievance only defendant Vilgos and ADW Vsitalo. Plaintiff never made a Step I claim against defendant Burnett, although he was informed that defendant Burnett made the decision to deny his religious meal request. Accordingly, in the opinion of the undersigned, defendant Burnett should be dismissed without prejudice.

Defendant Vilgos argues that he is entitled to summary judgment because he lacked personal involvement in denying plaintiff a religious meal. It is undisputed that defendant Vilgos interviewed plaintiff as directed by prison policy and gave the recommendation to deny plaintiff the requested diet. It appears that defendant Burnett considered defendant Vilgos' recommendation before he denied plaintiff's request for the diet. Clearly, defendant Vilgos had some involvement in the denial and his recommendation had to carry some weight on the issue. If defendant Vilgos' recommendation was not necessary, then there would be no reason for him to give one. Moreover, defendants have failed to attach a copy of defendant Vilgos' recommendation and defendant Burnett's decision. Defendant Vilgos clearly has failed to show a lack of personal involvement. Defendant Vilgos, in the opinion of the undersigned, cannot hide behind a lack of involvement defense when he clearly made a recommendation to deny plaintiff a religious meal and his recommendation was followed by defendant Burnett.

The more appropriate issue is whether plaintiff's rights were violated by defendant Vilgos when he recommended the denial of plaintiff's request for a religious meal. Plaintiff claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 of the RLUIPA states:

(a) General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). If plaintiff has a sincere religious belief, then failing to provide him a religious based diet could qualify as a substantial burden on plaintiff's right to practice his religion.

The MDOC offers a strict vegetarian diet for religious reasons to groups including Buddhists. Policy Directive 05.03.150 provides, in part:

> TT. A prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator. Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion. To request approval, the prisoner must submit a written request to the Warden, TRV Manager, or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden, TRV Manager or designee, as appropriate, of a decision; the Warden or TRV Manager shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

The prison policy is constitutional. The prison is entitled to create some standard to determine whether a prisoner is entitled to a religious meal. Providing special meals to prisoners is more costly than providing a standard meal. Some prisoners may make requests for a religious meal simply to manipulate a transfer to a different prison. Determining sincerity of a religious belief is a difficult task.

It appears, despite defendants' failure to provide the court with the written reasons for the denial of plaintiff's request for a Buddhist meal, that defendant Vilgos has articulated valid reasons which justify the refusal to provide plaintiff a Buddhist diet. Based upon plaintiff's interview with defendant Vilgos, defendant Vilgos recommended that plaintiff's request for a Buddhist diet

be denied. Defendant Vilgos attests that plaintiff had voluntarily removed himself from the strict vegetarian diet in the past based upon an alleged birth defect. Defendant Vilgos could not understand, if plaintiff had a birth defect that prevented him from eating a strict vegetarian diet in the past, how plaintiff could now return to this very same diet. Moreover, defendant Vilgos noted that plaintiff had repeatedly made store purchases that violated his asserted belief for a strict vegetarian diet. Plaintiff also had the option to eat from the regular vegetarian meal diet. In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. However, prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners' needs. Defendant has the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program. It is recognized that this is a very difficult task to undertake. Under the circumstances of this case, especially when plaintiff already has meal options to accommodate his beliefs, it is the opinion of the undersigned that defendant Vilgos' correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available. In the opinion of the undersigned, defendant Vilgos is entitled to summary judgment on plaintiff's RLUIPA claim.

Plaintiff alleges that defendant Vilgos retaliated against him. Plaintiff alleges that defendant retaliated against him when Vilgos told him that he could not practice Yoga postures and that he had only lost one lawsuit. Plaintiff further alleges that defendant Vilgos filed a false misconduct ticket against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant Vilgos' comments about plaintiff's past lawsuits cannot be adverse conduct for purposes of retaliation. The statement was not adverse to plaintiff and caused him no harm. Similarly, defendant Vilgos never told plaintiff that he could not assume Yoga postures, but instead informed plaintiff that he could not teach the religion of Yoga during Buddhist services. Defendant Vilgos explained further that meditation postures are not unique to Buddhist or Yoga. Buddhism and Yoga have many common practices such as postures, meditation and beliefs in reincarnation and karma, but they are separate religions especially in referring to why these practices are important. In fact, defendant Vilgos encouraged plaintiff to start a process for approval of a Yoga service for a separate callout.

Defendant Vilgos issued a misconduct ticket for disobeying a direct order. On April 6, 2007, plaintiff began to speak at Buddhist services about the warden's response to a grievance. Defendant Vilgos informed plaintiff that during Buddhist services it was not appropriate to discuss grievances. Defendant Vilgos told plaintiff to stop and plaintiff became argumentative. Plaintiff then began teaching Yoga. Plaintiff was again told to stop, but he continued and encouraged other prisoners to write grievances against defendant Vilgos. The misconduct ticket was written because plaintiff disobeyed a direct order. In the opinion of the undersigned, plaintiff has failed to show that defendant Vilgos violated his rights by retaliating against plaintiff.

Plaintiff also complains that his Eighth Amendment rights were violated when he was exposed to ETS and was not provided smoke free housing. Plaintiff alleges an Eighth Amendment claim against defendants based on his exposure to ETS, which allegedly posed an unreasonable risk of serious damage to his future health. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993) is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[1] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id*. Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id*. at 36.

---

[1]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

Plaintiff fails to satisfy the objective component for an Eighth Amendment violation. To prove the objective element, the prisoner must first show that he has been exposed to unreasonably high levels of ETS.[2] *Id.* at 35. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure to ETS" is necessary to establish the objective component. *Id.* at 36. Second, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* Plaintiff was housed in a smoke free cell and there was a no smoking rule in effect. Prisoner who smoked were given misconduct tickets. Plaintiff has failed to allege any facts quantifying his level of ETS exposure. Plaintiff's conclusory allegations regarding the level of ETS to which he was exposed fail to support the objective component of an Eighth Amendment claim. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

The Supreme Court in *Helling* did not mandate smoke free prisons. *Williams v. Howes,* No. 1:05-cv-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (citing *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998) and *Mansoori v. Lappin,* No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007)). A prisoner's exposure to smoke must cause more than mere discomfort or inconvenience. *Talal v. White,* 403 F.3d 423, 426 (6th Cir. 2005). Contrary

---

[2]"Plainly relevant to this determination" was the fact that plaintiff in *Helling* had been moved to a different prison and was "no longer the cellmate of a five-pack-a-day smoker." *Helling,* 509 U.S. at 35. The Supreme Court also observed that the prison had adopted a formal smoking policy restricting smoking to certain areas and where wardens could, contingent on space availability, designate non-smoking areas in dormitory sections. *Id.* at 35-36. The Supreme Court noted that the changed policies could make it impossible for the plaintiff to prove that he would be exposed to an unreasonable risk of ETS with respect to his future health. *Id.* at 36. It is noted that current MDOC policy prohibits smoking at all prisons.

to plaintiff's assertion, he does not have any documented medical need for entirely smoke free housing. *See Oliver v. Deen*, 77 F.3d 156, 159-61 (7th Cir. 1996) (an asthmatic inmate's assignment to cells with smoking inmates for 133 days resulting in ETS exposure which aggravated the plaintiff's asthma and necessitated his increased use of an inhaler failed to satisfy the objective component); *Williams,* 2007 WL 1032365, at *15 (asthmatic inmate's exposure to ETS during a seven-month period failed to satisfy the objective component). In the opinion of the undersigned, plaintiff has failed to show that defendants White and Randall violated his Eighth Amendment rights.

Alternatively, defendants Vilgos, White and Burnett move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be

resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants Vilgos and White could be entitled to qualified immunity because plaintiff has not shown that they violated any of his clearly established rights. Defendant Burnett has not attempted to address the merits of plaintiff's claim against him. In the opinion of the undersigned, defendant Burnett would not be entitled to the alternative defense of qualified immunity.

Accordingly, it is recommended that the motion for summary judgment filed by defendants Vilgos, White and Burnett (Docket #36) be granted. Defendants Vilgos and White should be dismissed with prejudice and defendant Burnett should be dismissed without prejudice. It is further recommended that defendant Randall's motion for summary judgment (Docket #59) be granted , dismissing this case in its entirety. It is also recommended that plaintiff's motions for an order (Docket # 88), for relief (Docket #89), for sanctions (Docket #141), to compel (Docket #146) and to disqualify (Docket #161) be denied. Finally, it is recommended that defendant Randall's motions to strike (Docket #129),to compel (Docket #116) ,and for medical records (Docket #54) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

        NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: February 12, 2009